**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

PARIS M. CULLAR,

                                 Civil No. 25-2916 (JRT/DLM)

              Petitioner,

v.

                               **MEMORANDUM OPINION AND ORDER**
                                 **ADOPTING REPORT AND**

WARDEN, FCI SANDSTONE,                  **RECOMMENDATION**

              Respondent.

---

Paris M. Cullar, Register Number 86798-509, Federal Correctional Institution Sandstone, Post Office Box 1000, Sandstone, MN 55072, *pro se* Petitioner.

Justin M. Page, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondent.

Paris Cullar petitions for a writ of habeas corpus under 28 U.S.C. § 2241.  He challenges the Federal Bureau of Prisons' methods for calculating time credits under the First Step Act and requests that the Court order the Bureau of Prisons to recalculate his prospective time credits.  Magistrate Judge Douglas L. Micko issued a Report and Recommendation ("R&R"), recommending that the Court dismiss Cullar's habeas petition without prejudice for lack of Article III standing.  Because Cullar has not "earned" the First Step Act credits at issue, the Bureau of Prisons has not improperly calculated his credits and any possible future injury is too speculative to support Article III standing.  The Court will therefore adopt the R&R, deny the Petition, and dismiss the action without prejudice.

**BACKGROUND**

### I.    FACTUAL BACKGROUND

Cullar is incarcerated at the Federal Correctional Institution in Sandstone Minnesota, under the supervision of the Federal Bureau of Prisons ("BOP").  (Pet. for Writ of Habeas Corpus, Ex. 1 ("Attach.") ¶ 6, July 18, 2025, Docket No. 1-1.)  He is serving a 135-month prison sentence after being convicted of conspiracy to distribute a controlled substance under 21 U.S.C. §§ 841(a)(1), (b)(1)(a), and 846 in the United States District Court, Northern District of Iowa.  (*Id.* ¶ 8.)  Cullar is participating in the First Step Act's ("FSA") "evidence-based recidivism reduction" program, which makes him eligible to earn time credits toward prerelease custody or supervised release.[1]  (*Id.* ¶ 9); *see also* 18 U.S.C. § 3632(d)(4)(A), (d)(4)(C).

According to Cullar's FSA time credit assessment dated June 28, 2025, Cullar had earned 315 FSA credits.  (Pet. for Writ of Habeas Corpus, Ex. A at 1, July 18, 2025, Docket No. 1-2.)  Cullar's Projected Release Date was November 12, 2031, but his FSA Projected Release Date was January 1, 2031, reflecting the 315 FSA credits.  (*Id.* at 3.)  Further,

---

[1] FSA credits are applied "toward time in prerelease custody or supervised release."  18 U.S.C. § 3632(d)(4)(C).  Under 18 U.S.C. § 3624(g)(3), a maximum of 12 months of FSA credits may be applied to reduce a prisoner's custodial sentence before his transfer to supervised release— effectively shortening the custodial portion of his sentence by one year.  *See also* 28 C.F.R. § 523.44(d)(3).  Any additional earned FSA credits beyond those first 365 are applied by the BOP to advance the date of a prisoner's transfer to prerelease custody.  *See* 28 C.F.R. § 523.44(c). Thus, a prisoner's FSA Conditional Placement Date indicates the date they are released to prerelease custody (e.g., a half-way house or home confinement), and a prisoner's FSA Conditional Release Date indicates the date they are released to supervised release.

Cullar's FSA Conditional Release Date was November 12, 2030, and Cullar had 615 FSA Conditional Placement Days, resulting in a FSA Conditional Placement Date of March 7, 2029.[2]  (*Id.*)

The Petition alleges that because there are 1,963 days between June 28, 2025 and November 12, 2030 (his FSA Conditional Release Date), he should be eligible to earn 981 additional FSA Conditional Placement Days.  (Attach. ¶¶ 17-21.)  Cullar reasons that by earning 15 FSA credits for every 30 days of his remaining incarceration (*id.* ¶ 9),[3] he will be entitled to 981 days additional FSA credit, in addition to the 315 days credits he has already earned, for a "maximum of 1,296 First Step Act time credits" (*id.* ¶ 21).  Cullar thus concludes that his FSA Time Credit Assessment ought to reflect his eligibility to earn "365 days towards reducing his term of imprisonment and 931 FSA Conditional Placement Credits" (*id.* ¶ 22), as opposed to the June 2025 assessment, which shows that Cullar is eligible to earn 365 days towards reducing his term of imprisonment and only 615 FSA Conditional Placement Days.  (*Id.* ¶¶ 22–23.)  Cullar claims the BOP's "miscalculation" is

---

[2] There are 615 days between November 12, 2030 (FSA Conditional Release Date) and March 7, 2029 (FSA Conditional Placement Date).

[3] *See* 18 U.S.C. § 3632(d)(4)(A)(i) ("A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."); 18 U.S.C. § 3632(d)(4)(A)(ii) ("A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.").  The BOP acknowledges that Cullar is eligible to earn 15 days of time credits for every 30 days of programming.  (Decl. of Jade Beyer ¶ 5, Jan. 27, 2026, Docket No. 9.)

delaying his transfer to prerelease custody, which in turn is denying him income from employment, causing him loss of consortium, separating him from his family, and exposing him to a dangerous custodial environment.  (*Id.* ¶ 32.)

## II.     PROCEDURAL HISTORY

On July 18, 2025, Cullar filed a Petition for Writ of Habeas Corpus, asking the Court to order the BOP to recalculate his prospective FSA credits, including all credits he alleges he will earn after he is transferred to prerelease custody.  (Pet. for Writ of Habeas Corpus, July 18, 2025, Docket No. 1.)  On August 28, 2025, the Magistrate Judge issued an R&R, recommending that Cullar's Petition be denied and the action dismissed, noting that Cullar failed to meet Article III's case-or-controversy requirements.  (R&R, Aug. 28, 2025, Docket No. 5.)  Cullar timely objected to the R&R.  (Pet'r's Objs. to R&R ("Objs."), Sept. 15, 2025, Docket No. 6.)

While the Court was considering Cullar's objections, the Court ordered the BOP to recalculate Cullar's FSA Conditional Placement Days and FSA Conditional Placement Date. (Order, Jan. 6, 2026, Docket No. 8.)  On January 27, 2026, the BOP provided an updated assessment worksheet.  (Decl. of Jade Beyer ("Beyer Decl.") ¶ 4, Ex. B. Jan. 27, 2026, Docket No. 9.)  According to the January 2025 FSA Time Credit Assessment, Cullar earned 365 FSA credits.  (*Id.*, Ex. B. at 1.)  Cullar's Projected Release Date was November 12, 2031, but his FSA Projected Release Date was November 12, 2030, reflecting the 365 FSA credits.  (*Id.*, Ex. B. at 3.)  Additionally, Cullar's FSA Conditional Release Date was

November 12, 2030, and Cullar had 610 FSA Conditional Placement Days, resulting in a

FSA Conditional Placement Date of March 12, 2029.[4]

**DISCUSSION**

**I.      STANDARD OF REVIEW**

After a magistrate judge issues an R&R, a party may file "specific written objections

to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* D.

Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's

report and recommendation to which objections are made and provide a basis for those

objections." *Mayer v. Walvatne*, Civil No. 07–1958, 2008 WL 4527774, at *2 (D. Minn.

Sept. 28, 2008). For dispositive motions, the Court reviews de novo "properly objected

to" portions of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

But Cullar is proceeding pro se. A document filed by a pro se litigant must be

liberally construed and "held to less stringent standards than formal pleadings drafted by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Eighth Circuit instructs courts

to liberally construe general and conclusory pro se objections to R&Rs and to conduct de

novo review of all alleged errors. *See Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).

Because Cullar is proceeding pro se, the Court will review his objections de novo.

---

[4] There are 610 days between November 12, 2030 (FSA Conditional Release Date) and March 12, 2029 (FSA Conditional Placement Date).

## II.   ANALYSIS

Cullar's central objection to the R&R is that the Magistrate Judge based his conclusion on the assumption that Cullar could not apply FSA credits he will earn during his term of imprisonment in prerelease custody.  (Objs. at 1.)  Cullar lists three ways in which he could apply the FSA credits that he allegedly is entitled to earn while serving his sentence in prerelease custody.[5]  Although Cullar's arguments are not illogical, the Court will overrule Cullar's objections because Cullar has not yet "earned" the FSA credits at issue.

Under 18 U.S.C. § 3624(g)(3), up to 12 months of First Step Act credits can be applied to trim an inmate's custodial term before being transferred to supervised release, thereby reducing imprisonment by one year.  *See also* 28 C.F.R. § 523.44(d)(3).  Any additional earned FSA credits beyond those first 365 are applied towards early transfer to prerelease custody.  28 C.F.R. § 523.44(c).  But only "earned" First Step Act credits "shall be applied toward time in prerelease custody or supervised release."   18 U.S.C. § 3632(d)(4)(C).[6]

---

[5]  Cullar outlines three potential uses for FSA credits earned during prerelease custody: reducing his supervised release term, obtaining additional prerelease custody, and replacing credits forfeited due to disciplinary sanctions. (Objs. at 2–4.)  The Court need not address these potential uses because, as discussed below, Cullar has not yet "earned" the credits he asks the BOP to consider.

[6] Cullar argues that the credits he will earn in prerelease custody can be used to reduce his supervised release term.  (Objs. at 2.)  Courts are split on whether earned time credits may shorten a custodial sentence and nothing else.  *Compare Guerriero v. Miami RRM*, No. 24-10337,

In his Petition, Cullar essentially asks the BOP to calculate the FSA credits he expects to earn during prerelease custody in order to advance the date of his transfer to prerelease custody.

However, Cullar's position is unavailing. Under 18 U.S.C. § 3632(d)(4)(C), only "earned" FSA credits can be "applied toward time in prerelease custody." Any FSA credits that Cullar might earn in the future while in prerelease custody remain hypothetical and are therefore not "earned." Cullar may earn such credits upon participating in "evidence-based recidivism reduction programming or productive activities." But at this time, neither Cullar nor the BOP know whether Cullar will participate in those activities. Indeed, Cullar could also violate prison rules and forfeit FSA credits because of such violations. Until such credits are "earned," federal law bars the BOP from applying them. Accordingly, Cullar cannot establish that the BOP is improperly calculating his release date.

The issue may also be framed, as the Magistrate Judge framed it, as a matter of Article III standing. Article III of the Constitution limits federal courts' jurisdiction to cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Therefore, a plaintiff

---

2024 WL 2017730, at *3 (11th Cir. May 7, 2024) (holding that FSA credits under § 3632(d)(4)(C) can only reduce a term of imprisonment and that excess FSA credits cannot be applied to reduce a term of imprisonment), *with Gonzalez v. Herrera*, 151 F.4th 1076, 1083 (9th Cir. 2025) (holding that earned FSA credits may be used to reduce a prisoner's term of supervised release). The Court need not take a side because Cullar has not yet "earned" the FSA credits that he requests the BOP to consider.

must have (1) suffered an injury in fact that is both (2) fairly traceable to the defendant's conduct and (3) likely to be redressed by a favorable decision. *Id.* at 560–61. To establish an injury in fact, a plaintiff must show an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 561 (citations and internal quotation marks omitted).

Cullar brings his habeas claim under 28 U.S.C. § 2241, and thus his "injury in fact" must relate to the legality of his custody, which includes claims challenging duration of the prisoner's confinement. *See Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014). Although Cullar properly challenges the length of his confinement under § 2241, he fails to allege an injury in fact because he has not yet earned the FSA credits he claims. As a result, any assertion that the BOP will confine Cullar for too long is speculative and hypothetical. Accordingly, Cullar has not shown an actual or imminent injury sufficient to establish standing.

For these reasons, the Court will deny Cullar's Petition for a Writ of Habeas Corpus and dismiss this matter without prejudice.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner Paris M. Cullar's Objection to the Magistrate Judge's Report and Recommendation (Docket No. [6]) is **OVERRULED**.

2. The Report and Recommendation (Docket No. [5]) is **ADOPTED**.

3.  The Petition for a Writ of Habeas Corpus (Docket No. [1]) is **DENIED**.

4.  The action is **DISMISSED without prejudice**.[7]


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  May 19, 2026                          _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                    United States District Judge

---

[7] Dismissal without prejudice means that Cullar can make any necessary changes and refile his petition.